**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA HARRIS,<br>on behalf of Plaintiff and the class<br>members described herein,<br><br>               Plaintiff,<br><br>      v.<br><br>WLCC LENDING FHC d/b/a<br>FOX HILLS CASH;<br>WAKPAMNI LAKE COMMUNITY<br>CORPORATION;<br>GENEVA LONE HILL;<br>BRET A. CRANDALL III;<br>RAYCEN RAINES, III, also known as<br>RAYCEN AMERICAN HORSE RAINES<br>and formerly known as RAYCEN<br>BALLARD; and JOHN DOES 1-20,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:23-cv-03149 |

## COMPLAINT – CLASS ACTION

1.     Plaintiff, Joshua Harris, brings this action against Defendants (a) WLCC Lending FHC d/b/a Fox Hills Cash, (b) Wakpamni Lake Community Corporation, (c) Geneva Lone Hill, (d) Bret A. Crandall III, (e) Raycen Raines, III, also known as Raycen American Horse Raines and formerly known as Raycen Ballard, and (f) John Does 1-20 to secure redress for usurious and illegal loans made to Illinois residents.

2.     Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count IV).

-1-

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d).

4.     This Court has personal jurisdiction over Defendants because they:

a.     Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b.     Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

5.     Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6.     Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92

Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

7.     Plaintiff Joshua Harris is a natural person who at all times relevant has resided in Chicago, Illinois.

8.     Defendant WLCC Lending FHC d/b/a Fox Hills Cash claims to be an entity of the Wakpamni Lake Community Corporation, a tribal corporation wholly owned by the Wakpamni Lake Community.

9.     Defendant Wakpamni Lake Community Corporation ("WLCC") is a corporation organized under the law of the Oglala Tribe.

10.     Defendant Geneva Lone Hill ("Hill") is a citizen of South Dakota believed to reside at 453 Batesland Housing, Batesland, SD 57716. On information and belief, Hill is president of the WLCC.

11.     Defendant Raycen Raines, III, also known as Raycen American Horse Raines and formerly known as Raycen Ballard ("Raines"), is a citizen of South Dakota believed to reside at 3503 or 3505 Chapel Valley Road, Rapid City, SD 57702. On information and belief, he is a board member and Chief Executive Officer of WLCC.

12.     On information and belief, Raines has taken a lead role in originating the Internet lending business complained of herein, and in organizing WLCC and acquiring capital for lending.

13.     Defendant Bret A. Crandall ("Crandall") is an individual believed to be a citizen of Maryland and to reside at 1707 Randall Dr., Solon, IA 52333-9424, or 1413 Foxwood Court, Annapolis, MD 21409. On information and belief, he is employed by WLCC as director of compliance.

14.     John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

## FACTS RELATING TO INTERNET LENDING BUSINESS

15.     Raines, Hill and others developed a plan to make illegal high-interest loans over the Internet, while evading liability for such loans by using the tribal immunity of the Oglala Sioux tribe.

16.     Raines and Hill initially asked the Economic Development Office of the Oglala Sioux Tribe to enter into a business arrangement for the conduct of a high-interest consumer lending business.

17.     The Economic Development Office declined to enter into any such business arrangement.

18.     Raines and Hill thereupon formed WLCC.

19.     While WLCC purports to be a tribal entity, it is in fact operating contrary to the wishes of tribal authorities.

20.     The actual lending operations were carried out and continue to be carried out in locations other than tribal lands.

21.     All customer payments were processed through Cash Cloud, LLC, a now-defunct Arizona entity with no tribal affiliation, and then Cash Cloud, Inc., an Arizona corporation.

22.     Other locations used to conduct the lending operations are in Utah, Texas, Canada and Belize. For example, demands on wage assignments have purported to come from 215 East Center Street, Blanding, Utah.

23.     The operations that are not conducted on tribal land include lead generation, marketing, funding, underwriting, payment processing, and collection.

24.     No member of the Tribe participates in the day to day lending operations.

25.     Raines and Hill made Crandall director of compliance for WLCC. Crandall devised and implemented the lending practices engaged in by WLCC.

26.     WLCC formed and conducted a series of lending operations that were either subsidiaries or assumed names, and which change from time to time. These included:

        a.     WLCC Lending FHC, d/b/a Fox Hills Cash.

-4-

    b.       WLCC Lending FDL d/b/a Fast Day Loans.

    c.       WLCC Lending BGL d/b/a Bison Green Lending.

    d.       WLCC Lending JEM d/b/a Explore Credit.

    e.       WLCC Lending AIL d/b/a Good Loans Fast.

    f.       WLCC Lending TLP d/b/a Rapid Loan.

    g.       Black Hawk Financial d/b/a Title Loan Fast.

    h.       WLCC Lending MSS d/b/a MyBackWallet.

    i.       WLCC Lending GEG d/b/a TheGanEdenGroup.com;

    j.       Checkadvanceusa.net;

    k.       WLCC Lending CFC d/b/a Consumer First Credit;

    l.       Green Circle Lending;

    m.       Rolling Plains Cash;

    n.       Cash on Cloud 9;

    o.       Easy Cash Online Store;

    p.       BaysideCash.com;

    q.       Whisper Rock, LLC;

    r.       BeachsideCash.com;

    s.       Blvdcash.com;

    t.       Fast Money Store;

    u.       FiresideCash.com;

    v.       Seaside Dollar;

    w.       SeasidePayday.com;

    x.       WLCC Lending MFT d/b/a Merit Financial Trust; and

    y.       WLCC Lending MFT d/b/a Ocean Park Funding;

27.    Each of these entities claims that it is "an entity of the Wakpamni Lake Community Corporation (WLCC), a tribal corporation wholly owned by the Wakpamni Lake Community."

28.　In fact, the Oglala Tribe receives no benefit from the lending operations.

29.　WLCC receives a small fee for each loan made.

30.　All profits from the lending activities are received by non-members of the Tribe.

31.　The funds lent are transferred by ACH credit to the borrowers' bank accounts throughout the United States.

32.　Repayment of the loans is made by ACH debit from the borrowers' bank accounts throughout the United States.

**SOVEREIGN IMMUNITY AS A DEFENSE**
**TO STATE USURY LAWS AND "RENT-A-TRIBE SCHEMES"**

33.　An entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

34.　To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

35.　An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016).

36.　These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

-6-

37. Where, as here, non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

38. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

39. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y.). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## DEFENDANTS' LOANS

40. WLCC Lending FHC d/b/a Fox Hills Cash makes loans through its website, https://www.foxhillscash.com/, to consumers at triple digit interest rates.

41. On or about July 8, 2021, WLCC Lending FHC d/b/a Fox Hills Cash made a $450 loan to Plaintiff. Plaintiff received the document in Exhibit A. The annual percentage rate is disclosed as 851.2992%.

42. These are standard loan terms regularly used by WLCC Lending FHC d/b/a Fox Hills Cash.

43. The loan was made for personal purposes and not for business purposes.

44. The principal amount was transferred to Plaintiff's bank account in Illinois via ACH.

45.     The loan was made entirely via Internet.

46.     The loan was to be repaid via ACH.

47.     Plaintiff made some payments, including interest.

48.     Defendants claim that amounts

49.     Defendants' lending does not actually occur on the Tribe's reservation.

50.     A significant majority of the transaction occurs within the State of Illinois – applying for the loan and receiving and collecting the funds.

51.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

52.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

53.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

54.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

55. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

56. Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

57. Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

58. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

59.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569, *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

60.     Plaintiff incorporates paragraphs 1-59.

61.     This claim is against all Defendants.

62.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff must repay the outstanding loans made to them (Exhibit A, in Plaintiff's case).

63.     Declaratory relief will resolve such controversy.

64.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

65.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

66.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC Lending FHC d/b/a Fox Hills Cash at more than 9% interest (c) which loan has not been paid in full.

67.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

68.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

69.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

70.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

71.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

72.     Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

73.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.      Injunctive relief;

ii.     Declaratory relief;

iii.    Restitution of all amounts collected on the loans from members of the class;

iv.     Costs of suit; and

v.      Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

74.     Plaintiff incorporates paragraphs 1-59.

75.     This claim is against all Defendants.

76.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

77. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

78. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

79. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC Lending FHC d/b/a Fox Hills Cash at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

80. Plaintiff may alter the class definition to conform to developments in the case and discovery.

81. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

82. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

83. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

84. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

85. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

-12-

against Defendants for:

    i.        Damages as provided in 815 ILCS 205/6.

    ii.      Attorney's fees, litigation expenses and costs of suit; and

    iii.     Such other and further relief as the Court deems proper.

### COUNT III – PREDATORY LOAN PREVENTION ACT
### AND ILLINOIS CONSUMER FRAUD ACT

86.     Plaintiff incorporates paragraphs 1-59.

87.     This claim is against all Defendants.

88.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

89.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

### CLASS ALLEGATIONS

90.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

91.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC Lending FHC d/b/a Fox Hills Cash at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

92.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

93.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

94.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect

-13-

illegal loans.

95.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

96.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

97.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.     Compensatory damages;

      ii.     Punitive damages;

      iii.     Attorney's fees, litigation expenses and costs of suit; and

      iv.     Such other and further relief as the Court deems proper.

## COUNT IV – RICO

98.     Plaintiff incorporates paragraphs 1-59.

99.     This claim is against Hill, Crandall and Raines, who are the RICO "persons."

100.     All loans made in the name of WLCC Lending FHC d/b/a Fox Hills Cash to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

101.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

102.     WLCC Lending FHC d/b/a Fox Hills Cash is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

103.     Defendants Hill, Crandall and Raines are associated with this enterprise, in that they direct the making of loans by WLCC Lending FHC d/b/a Fox Hills Cash.

104.     Defendants Hill, Crandall and Raines conducted or participated in the conduct of the affairs of WLCC Lending FHC d/b/a Fox Hills Cash through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

105.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

106.     Plaintiff brings this claim on behalf of a class.

107.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC Lending FHC d/b/a Fox Hills Cash at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of suit.

108.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

109.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

110.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

> a.     Whether the loans at issue are "unlawful debts" as defined in RICO.
>
> b.     Whether WLCC Lending FHC d/b/a Fox Hills Cash is an "enterprise."
>
> c.     Whether Defendants Hill, Crandall and Raines are each associated with WLCC Lending FHC d/b/a Fox Hills Cash.
>
> d.     Whether Defendants Hill, Crandall and Raines each conducted or participated in the affairs of WLCC Lending FHC d/b/a Fox Hills Cash through a pattern of making and collecting unlawful loans.

111. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

112. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

113. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a. Individual actions are not economically feasible.

      b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i. Treble damages;

      ii. Attorney's fees, litigation expenses and costs of suit; and

      iii. Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Dulijaza (Julie) Clark (ARDC 6273353)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury.

<u>*/s/ Daniel A. Edelman*</u>
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman